[No. 13933-2-II.   Division Two.   July 1, 1992.]

JOHN HONAN, ET AL, *Appellants,* v. RISTORANTE ITALIA, INC., ET AL, *Respondents.*

*Edward G. Hudson, Robert E. Mack, Barbara A. Henderson,* and *Smith, Alling, Lane,* for appellants.

*John P. Jensen, Wallace M. Rudolph,* and *J.M.B. Crawford,* for respondents.

GREEN, J.[*] — This appeal arises out of an action by John and Anne Honan against Ristorante Italia, Inc. (R.I.), and James Crawford, a single man, to recover the amounts due under a contract for the sale of personal property in a Tacoma restaurant, rental payments due under a lease of the premises, and damages. In the alternative, the Honans sought to recover possession of the property free and clear of any claim by R.I. or Mr. Crawford. After dismissing Mr. Crawford, the court summarily treated the case as an action for unlawful detainer. Next, the court applied the statute of frauds to exclude evidence of an oral agreement between Mr. Crawford and R.I. Finally, the court dismissed the action, awarding costs and attorney fees to Mr. Crawford and R.I. The Honans appeal.

The issues presented are whether the trial court erred by (1) treating the action as one for unlawful detainer, (2) awarding double damages to R.I., (3) applying the statute of frauds to exclude evidence of an agreement between Crawford and R.I., and (4) dismissing Crawford from the case and denying the Honans' motions to amend the complaint.

Briefly, the facts are as follows. The Honans own a restaurant in Tacoma. On September 11, 1985, they sold the usable stock and trade, furniture, fixtures and equipment in the restaurant for $110,000, payable by installments. The contract of sale, at the outset, states the buyer is "James Crawford, a single man." The contract further states the parties had executed a lease of the realty; the lease was attached to the contract and incorporated by reference. The signature line had each individual name typed beneath it. The Honans signed on the line designated for them. Mr. Crawford, who signed outside the Honans' presence, interlineated in handwriting above his signature "Cedar Inn of Tacoma, Inc.", and following his typewritten name beneath

---

[*]Judge Dale M. Green is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

the signature line, he wrote "Pres". The restaurant was operated by Cedar Inn, a corporation solely owned by Mr. Crawford.

Subsequently, Mr. Crawford fell into financial difficulty and had problems with his liquor license. He asked the Honans to approve a substitute lease to a new corporation, R.I. According to the Honans, Mr. Crawford told them that the new lease was merely a substitution for the original lease and, consequently, the new lease was similarly incorporated into the sales contract. Although the new corporation was officially headed by Roy Lambert, Mr. Crawford represented that he was involved in R.I. and that R.I. would, therefore, be obligated under the installment contract as well as under the lease.

Mr. Crawford negotiated with the Honans, prepared the R.I. lease, and on July 5, 1989, brought it to Mr. Honan for approval. When Mr. Crawford presented him with the new lease, Mr. Honan was playing golf on a Tacoma course. At Mr. Crawford's urging, the Honans signed the new lease, setting the monthly rent at $1,965.35. The new lease, like the original lease, provided in part:

> 17. If tenant shall fail to pay any installment of rent and shall fail or omit to pay the same within ten (10) days after being notified in writting [sic] thereof by the landlord or if the tenant shall violate or omit to perform any of the other covenants herein contained . . . then landlord, or any other person by his order, may re-enter the premises, terminate this lease and agreement and repossess the premises . . ..

R.I. took over the restaurant and all the furnishings. The oral representations of Mr. Crawford were not included in the new lease. Nonetheless, Mr. Crawford states in his affidavit:

> Any and all goodwill, right, title, credits, and interest my defunct corporation, Cedar Inn of Tacoma, Inc., had incident to the September 11, 1985 lease has been assigned to Ristorante Italia, Inc., including what I believe should be an offsetting credit for roof repairs performed on the subject premises at a cost of $11,103.40 . . ..

Moreover, this offset is claimed by R.I. in its answer and counterclaim to the Honans' initial complaint and was

affirmed to the trial court by R.I.'s counsel during the hearing on a motion to revise.

The installments on the sales contract were not paid by either Mr. Crawford or R.I. and R.I. fell behind on the rent. On November 7, 1989, the Honans' attorney mailed a letter to Roy Lambert, registered agent for R.I., and to Mr. Crawford demanding payment of moneys due under the 1985 sales contract and the 1989 lease. That letter stated the amount due on the sales contract was $21,413.12 and noted $3,930.70 due on the lease. The letter requested payment of the rent by November 13 and asked that immediate arrangements be made to pay the arrearage on the sales contract. The letter was delivered to Mr. Lambert, but returned undelivered as to Mr. Crawford. Mr. Lambert paid $2,000 and promised to bring the rent to a current status. When Mr. Lambert failed to tender the remainder, the Honans commenced this action on November 30, 1989.

The amended complaint alleged: (1) defaults under the sales contract and the R.I. lease; and (2) that R.I. had assumed the obligations of the sales contract from Cedar Inn, Inc., and had not made the monthly payments. The Honans sought an order requiring payment of the amounts owed under the contract and lease, together with damages, or an order placing the Honans in possession of the properties free and clear of any claim or right of R.I. or Mr. Crawford.

On December 6, the summons and complaint were served on R.I. Service on Mr. Crawford could not be made because he could not be located. The Honans then moved for permission to serve Mr. Crawford by publication and notice on the premises. They also moved for an order authorizing them to immediately repossess the property and to prohibit access by R.I. or Mr. Crawford without leave of court pendente lite. This motion was granted ex parte by the court commissioner without requiring a bond.

Meanwhile, on December 6, 2 days before the motion was granted, Mr. Honan went onto the property and changed the locks. On December 8, a "notice of default and unlawful

detainer" directed to R.I. and Messrs. Lambert and Crawford was posted in several places on the premises. The notice showed unpaid rent of $3,896.05 through December 1. Also on December 8, the Honans filed a complaint for unlawful detainer.

On December 19, R.I. moved to set aside the ex parte protective order. At the same time, R.I. deposited $3,896.05 into the registry of the court. The same day, R.I. filed its answer to the November 30 complaint and counterclaimed for damages alleging that the Honans had unlawfully repossessed the premises by changing the locks and the unpaid rent should be offset by the cost of certain repairs undertaken by R.I. The commissioner denied the motion to set aside. R.I. moved for revision.

On January 14, 1990, R.I.'s motion to revise was heard by a superior court judge. The Honans argued that paragraph 17 of the lease authorized them to enter the property in the event of a breach of the lease. In an affidavit, the Honans stated they changed the locks because the premises had not been used since July 1, 1989, and appeared to be abandoned; utility services were stopped for nonpayment of bills and they feared the furnishings might be removed and the property otherwise damaged. A few days earlier, Messrs. Crawford and Lambert had been observed removing personalty from the building. Because of these concerns, the Honans hired a watchman for the premises. According to Mr. Honan, on December 5, "Mr. Crawford appeared at the premises with a pistol, and asked the individual I had retained to watch the building, along with a companion of his, to leave the premises. They complied . . .". The trial court granted R.I.'s motion to revise and set aside the protective order, reasoning that a landlord is not authorized to use self-help, regardless of a lease provision permitting the landlord's reentry.

The notice of default and unlawful detainer that was posted on December 8, and the corresponding complaint filed with the court, were consolidated with the November 30 action to enforce the sales contract and R.I.'s lease. Trial

was set for March 19. Before trial, Mr. Crawford moved for his dismissal on these theories: (1) the R.I. lease superseded any agreement he had with the Honans; (2) he was not connected in any way with R.I.; (3) he is not personally liable on the sales agreement because he signed it as a corporate officer of Cedar Inn of Tacoma, Inc.; and (4) regardless of Mr. Honan's belief that he assigned his obligations under the sales contract to R.I., the statute of frauds requires such assignment to be in writing to be enforceable. The Honans moved to amend the pleadings to name "James Crawford, trustee of Cedar Inn of Tacoma, Inc., now a defunct corporation."

The court denied the motion to amend, but granted Mr. Crawford's motion to dismiss, finding:

> That any claim that Plaintiff [Honans] has on the written purchase agreement against Cedar Inn, Inc., is not a claim against . . . James Crawford or . . . Ristorante Italia, Inc., because of the statute of frauds. The court specifically finds that neither James Crawford [n]or Ristorante Italia, Inc., signed such agreement. Further, the court finds that the 1989 lease agreement between Plaintiffs and defendant Ristorante Italia, Inc., is an integrated lease agreement and that the only obligations under this agreement are the obligations contained in the agreement . . ..

As to the eviction portion of the action, the court found:

> The Plaintiffs [Honans] had unlawfully detained the premises of the . . . Ristorante Italia, Inc., without legal process by changing the locks and preventing Ristorante Italia, Inc., from entering the premises for 33 days. The court further finds that the rent for the premises for 33 days was $2,423.87 . . .. The court determines that . . . Ristorante Italia, Inc., as the entity legally in possession is entitled to double the rent for the period of time that it was dispossessed, or $4,847.74 . . ..

The trial court subtracted the double rent, $4,847.74, from $8,379.88 (the unpaid rent due plus $533.13 in utility bills paid by the Honans) and subtracted $500 for the cost of repairing the locks and found rent due the Honans to be $3,032.14. Since R.I. had deposited $3,896.05 into the registry of the court, the trial court determined $863.91 was to be returned to R.I. The court also awarded attorney fees and costs — R.I. $5,405.75 and Mr. Crawford $1,500.

On appeal, the Honans first contend the court erred in considering the consolidated proceeding to be an action for unlawful detainer under RCW 59.12. We agree.

In their complaint, the Honans sought a judgment for unpaid rent, the amount due on the sales contract plus damages, or possession of the property free and clear of any claim by R.I. and Mr. Crawford. It is well settled that additional claims cannot be joined in an unlawful detainer action. *First Union Mgt., Inc. v. Slack*, 36 Wn. App. 849, 679 P.2d 936 (1984). Furthermore, in this case a 20-day summons was used, invoking the general jurisdiction of the court, in contrast to a notice in unlawful detainer, which is returnable in not less than 6 days nor more than 12 days after service. RCW 59.12.070. It is clear that an action for recovery of land which is commenced by service of a 20-day summons is not an unlawful detainer action. *Gustin v. Klingenberg*, 190 Wash. 590, 70 P.2d 308 (1937). Further, the court treated the complaint as one for multiple kinds of relief and dealt with all of them in reaching its decision. Based on the above circumstances, we hold that the trial court erred when it treated this case as an action for unlawful detainer.

Moreover, RCW 7.28.250 provides:

> When in the case of a lease of real property and the failure of tenant to pay rent, the landlord has a subsisting right to reenter for such failure; he may bring an action to recover the possession of such property, and such action is equivalent to a demand of the rent and a reentry upon the property. But if at any time before the judgment in such action, the lessee . . . pay to the plaintiff, or bring into court the amount of rent then in arrear . . . he shall be entitled to continue in the possession . . . ..

This statute and the decisions construing it allow a landlord to repossess the premises if the lease contains a provision for the landlord's reentry in the event of a breach. The bringing of the action is sufficient notice of default and demand for payment under the statute. Both ejectment and unlawful detainer are recognized as legal methods of evicting tenants who do not pay their rent. Stoebuck, *The Law Between*

*Landlord and Tenant in Washington: Part II*, 49 Wash. L. Rev. 1013, 1020 (1974); *see Grove v. Payne*, 47 Wn.2d 461, 288 P.2d 242 (1955); *Harris v. Morgensen*, 31 Wn.2d 228, 196 P.2d 317 (1948); *Petsch v. Willman*, 29 Wn.2d 136, 185 P.2d 992 (1947). It is evident the essence of the action here was one for ejectment, not unlawful detainer.

Thus, when the Honans filed their November complaint, they were technically in possession of the property and R.I.'s continued presence was unlawful. RCW 7.28.250. The Honans were free to change the locks by virtue of paragraph 17 of the lease and the trial court erred when it found the Honans unlawfully detained R.I. from the premises. Had the Honans relied only on the notice of unlawful detainer posted and filed on December 8, pursuant to RCW 59.12, the court would have been correct in finding the Honans evicted their tenants without legal process. But, as the record indicates, the unlawful detainer was essentially an afterthought; R.I. had already been evicted by the action filed on November 30. RCW 7.28.250.

Second, in light of the above holding, we reverse the award of double damages to R.I.

Third, the Honans contend the trial court erred in ruling the statute of frauds applied and prevented the admission of extrinsic evidence surrounding the transaction between Mr. Crawford, R.I. and the Honans. We agree.

After the sales contract was executed on September 11, 1985, Mr. Crawford and his corporation, Cedar Inn of Tacoma, Inc., took possession of the personal property in the restaurant and the premises under the incorporated lease. At the request of Mr. Crawford, the Honans signed the lease to R.I. on July 5, 1989. There was no separate contract between the Honans and R.I. since Mr. Crawford represented he was involved with R.I. and he told the Honans that R.I. was simply a substitute tenant for Cedar Inn. Documents filed with the Secretary of State confirm Crawford's involvement with R.I. Crawford's association with R.I. is also demonstrated by his helping to remove personalty from the restaurant and his ordering the watch-

man to leave the premises. The nature of his involvement creates a question of fact. R.I. took possession of the restaurant and all its furnishings. In his affidavit, Mr. Crawford acknowledges he assigned the sales contract to R.I. R.I. affirmed such assignment through its counsel.

■ ■ In our view, extrinsic evidence was necessary to clarify the relationship and obligations of the parties. When R.I. took possession of the personal property covered by the sales contract, the assignment was performed. Performance or partial performance of an oral agreement satisfies the statute of frauds, *e.g.*, *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 465, 457 P.2d 603 (1969), and the statute was no longer a bar to testimony concerning the assignment. Further, extrinsic evidence surrounding the entire transaction was admissible to determine the intent of the parties on the question of whether the R.I. lease was a substitute for the Crawford lease and thereby part of the sales contract. *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990); *Max L. Wells Trust v. Grand Cent. Sauna*, 62 Wn. App. 593, 815 P.2d 284 (1991). Thus, we conclude the trial court erred in summarily dismissing the action based on the statute of frauds.

Fourth, the Honans contend the court erred in dismissing the action as to Mr. Crawford and denying the motion to amend by adding Cedar Inn of Tacoma, Inc., as a party. Again, we agree.

The motions to amend were filed immediately before the trial, and immediately after Mr. Crawford and R.I. reversed their prior positions concerning the assignment. The two now contended that R.I. had orally assigned the sales contract back to Mr. Crawford. Mr. Crawford also claimed he was not personally liable because he signed the sales contract as president of Cedar Inn of Tacoma, Inc. The court, concluding Mr. Crawford was not personally liable on the contract, dismissed the action while denying the Honans' motion to add Cedar Inn as a party. Moreover, in spite of the Honans' attempts to make the court aware of R.I. and Crawford's change in position regarding the assignment of

the lease, the motion to add claims for fraud and misrepresentation was also denied. This was error.

■ CR 15(a) states that "a party may amend his pleading only by leave of court . . . and leave shall be freely given when justice so requires." We review a trial court's ruling on a motion to amend for abuse of discretion. *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 736 P.2d 249 (1987). Because the purposes of pleadings are to " 'facilitate a proper decision on the merits'," leave to amend should be freely given "except where prejudice to the opposing party would result.' " *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (quoting *United States v. Hougham*, 364 U.S. 310, 316, 5 L. Ed. 2d 8, 81 S. Ct. 13 (1960)). Leave to amend is less likely to be prejudicial to the opposing party if the amendment pertains to the original claims. *Caruso*.

Here, Mr. Crawford was president and sole stockholder of Cedar Inn. The contract was with Mr. Crawford, "a single man", and a signature line for his signature was provided. His interlineation of "Cedar Inn of Tacoma, Inc." and "Pres" was not initialed by the Honans. Consequently, an issue of fact exists as to the capacity effect of the interlineations. Moreover, the addition of Cedar Inn as a party is not prejudicial because one of the main issues is liability on the sales contract. Consequently, we are constrained to find the court's denial of the motion to amend to add Cedar Inn, Inc., was an abuse of discretion and the dismissal of Mr. Crawford was error.

Finally, the Honans argue that the court erred in denying their motion to amend their complaint to allege fraud and misrepresentation when they learned the day of trial that Mr. Crawford and R.I. denied the assignment they had previously admitted. Again, such an amendment lies within the discretion of the trial court and will be reviewed only for abuse. The proposed amendment will not delay trial and does not prejudice Mr. Crawford or R.I. because it arises out of the transaction that is the subject of this litigation. We

conclude, therefore, the motion should have been granted in the interest of disposing of all the issues on the merits in one action. The claim of fraud and misrepresentation stems only from the facts in issue and not from any new facts to be discovered.

Accordingly, the judgment is reversed and this case is remanded for trial with leave granted the Honans to amend.

MORGAN, A.C.J., and ALEXANDER, J., concur.

Review denied at 120 Wn.2d 1009 (1992).