# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MILWAUKEE AVENUE, LLC, | No. 54711-2-II |
| Respondent, | |
| v. | |
| TED SPICE, PLEXUS INVESTMENTS, LLC, and ALL OTHER OCCUPANTS, | UNPUBLISHED OPINION |
| Petitioners. | |

LEE, C.J. — Ted Spice appeals the superior court's order granting partial summary judgment ejecting his manufactured homes from certain real property. Spice argues that genuine issues of material fact remain as to whether Milwaukee Avenue, LLC, has a valid subsisting interest in the property to maintain an action for ejectment and as to whether Milwaukee maintains superior title to the property at issue. Spice also argues that equitable principles require reversal of the superior court's order granting partial summary judgment.

We hold that the superior court did not err in granting partial summary judgment because no genuine issues of material fact remain as to whether Milwaukee has a valid subsisting interest and superior title in the property at issue. We also hold that equitable principles do not merit reversal. Accordingly, we affirm the superior court's order granting partial summary judgment ejecting Spice's manufactured homes from the property at issue.

FACTS

A.    SPICE'S INTEREST IN THE PROPERTY AT ISSUE (*SPICE* I)

This appeal concerns certain real property located in Puyallup, Washington. On December 8, 2009, Doris Mathews died. *Spice v. Estate of Mathews*, No. 48458-7-II, slip op. at 2 (Wash. Ct. App. Dec. 12, 2017) (unpublished)[1] (*Spice* II). Prior to her death, Mathews transferred several parcels of property to Spice individually, which includes the property that is the subject of this appeal. *Id*. at 1.

After Mathews' death, Spice filed a creditor's claim against her estate. *Spice v. DuBois*, No. 44101-2-II, slip op. at 3 (Wash. Ct. App. Mar. 1, 2016) (unpublished)[2] (*Spice* I). The creditor's claim proceeded to a jury trial. *Id*. at 4. For the parcel of property relevant to this appeal, the jury awarded Spice a 25 percent ownership interest and the Estate a 75 percent ownership interest. *Id*. at 5. This court affirmed the jury's award in *Spice* I. *Id*. at 15.

B.    PROPERTY TRANSFERS OUT OF THE ESTATE BY DUBOIS (*SPICE* II)

In April 2013, Spice filed another creditor's claim against the Estate, later amending his complaint to add claims alleging a breach of fiduciary duty against the Mathews Estate by committing waste through mismanagement of the property, among other claims. *Spice* II, slip op. at 3-4. The superior court granted the Estate's motion for summary judgment and dismissed all of Spice's claims. *Id*. at 4-5. The superior court also denied Spice's motion for reconsideration. *Id*.

---

[1]  http://www.courts.wa.gov/opinions/pdf/D2%2048458-7-II%20Unpublished%20Opinion.pdf.

[2]  http://www.courts.wa.gov/opinions/pdf/D2%2044101-2-II%20Unpublished%20Opinion.pdf.

at 6. Spice appealed the superior court's summary judgment ruling and denial of reconsideration. *Id*. at 7.

While Spice's second lawsuit against the Estate was pending in 2014, Donna E. DuBois, as personal representative of the Mathews Estate, filed a motion in superior court to transfer title of the property from the Estate to herself personally. *Spice v. Estate of Mathews*, No. 50915-6-II, slip op. at 7 (Wash. Ct. App. Oct. 15, 2019) (unpublished)[3] (*Spice* III). The superior court denied the Estate's motion in January 2014. *Id*. In February 2014, the Estate renewed its motion to transfer the Estate property to DuBois, and the superior court again denied the motion. *Id*. Nevertheless, in November 2014, DuBois, as personal representative of the Estate, transferred the property to herself individually. *Id*. Also while Spice's second suit against Mathew's probate estate was pending, DuBois and her husband filed for bankruptcy in September 2013. *Id*. at 5.

In January 2015, the superior court vacated DuBois' November 2014 transfer of property out of the Mathews Estate to herself individually, removed DuBois' non-intervention powers in the Mathews probate matter, and prohibited further conveyances without court authorization. *Id*. at 7. But on March 12, 2015, despite the superior court's order, DuBois again transferred properties from herself individually to herself as personal representative of the Estate. *Id*.

In February 2017, DuBois, as personal representative, again moved to allow the transfer of Estate assets to herself individually and to restore her non-intervention powers as personal representative of the Mathews Estate. *Id*. In March 2017, the superior court restored DuBois'

---

[3] http://www.courts.wa.gov/opinions/pdf/D2%2050915-6-II%20Unpublished%20Opinion.pdf.

non-intervention powers. The superior court also allowed the transfer of all the Estate's assets to DuBois as an individual, including the property at issue in this case.

On December 12, 2017, we reversed the superior court's summary judgment order dismissing Spice's claim for waste in *Spice* II, slip op. at 18. We held that a quasi-fiduciary relationship between the Estate and Spice existed with regard to the properties held by Mathews and Spice, and that a material question of fact existed as to whether the Estate had breached its duty with regard to Spice's waste claim. *Id*. at 14. We remanded the case to the superior court for additional proceedings on Spice's claim that the Estate breached its fiduciary duty by allowing waste.

C.   FRAUDULENT TRANSFER CLAIM (*SPICE* III)

In March 2017, while the appeal in *Spice* II was still pending, Spice filed another lawsuit against the Mathews Estate, among others. *Spice* III, slip op. at 9. This lawsuit was consolidated with the original Mathews probate proceeding. *Id*.

In June 2017, Spice amended his complaint to allege fraudulent misrepresentation, fraudulent transfer act violations, agents acting without proper authority, agent acting without bond, failure to provide funds for litigation and development costs, waste, and a violation of the Consumer Protection Act. *Id. at* 9-10.

The Estate moved to dismiss Spice's complaint. *Id*. at 10. The superior court treated the Estate's motion as a motion for summary judgment dismissal of Spice's claims, which the court granted. *Id*. at 10-11. The superior court entered an order dismissing Spice's claims on December 1, 2017, less than two weeks before this court decided *Spice* II. *Id*. at 11. Spice appealed the superior court's order granting summary judgment dismissal of his claims (*Spice* III). *Id*.

4

In *Spice* III, we held that DuBois' right to the property that was transferred to the bankruptcy estate is determined by state law. *Id*. at 13. We also held that:

> [DuBois'] interest in the Estate property has been, and remains to be, subject to this probate proceeding. Until this probate proceeding is completed, [DuBois'] interest—now her bankruptcy estate's interest—is subject to the outcomes of probate. Only after the probate proceeding closes can [DuBois'] resulting interests be treated as her own.
>
> . . . .
>
> . . . Because [DuBois'] interest remains subject to the completion of probate, *the bankruptcy estate's interest in the properties is also subject to the completion of probate*.

*Id*. at 13, 15 (emphasis added) (discussing RCW 11.04.250 and *In re Peterson's Estate*, 12 Wn.2d 686, 733-35, 123 P.2d 733 (1942)). We did not reach the issue of whether the transfer of Estate assets was proper; however, we held that Spice raised a material question of fact regarding his claims for waste and fraudulent transfers. *Id*. at 32-33. Accordingly, we remanded the waste and fraudulent transfer claims to the superior court for further proceedings. *Id*. at 33.

D.      DUBOIS BANKRUPTCY PROCEEDING & SALE OF THE PROPERTY AT ISSUE

As noted above, DuBois and her husband filed for chapter 11 bankruptcy in September 2013. *Id*. at 5. In January 2016, their bankruptcy was converted to a chapter 7 proceeding. *Id*. DuBois and her husband created schedules of their assets and liabilities, which included DuBois' partial interest in the property at issue gained through the Mathews probate proceedings. *Id*. A bankruptcy trustee was appointed to liquidate the DuBoises' assets to pay their debts. *Id*.

The bankruptcy court ordered a discharge of the DuBoises' debts on May 3, 2016. *Id*. In January 2017, the DuBoises' bankruptcy trustee filed a complaint against Spice in bankruptcy court to determine his interest in the properties and to sell those properties in which Spice had an

5

interest, including the property at issue where it was determined in *Spice* I that the Mathew Estate held a 75% ownership interest and Spice held a 25% ownership interest. *Id*. at 5-6. In June 2019, the bankruptcy court ordered the sale of the property at issue under 11 U.S.C. § 363(h). *In re DuBois*, No. 13-46104-BDL (Bankr. W. Wash. June 10, 2019).

On July 30, 2019, Milwaukee purchased the property at issue "as is" from the bankruptcy trustee of the DuBois bankruptcy estate through a quitclaim deed. At the time it purchased the property, Milwaukee was aware that Spice had waste and fraudulent transfer claims involving the property that were pending against the Mathews Estate and DuBois in the Mathews probate proceeding. And the title insurance policy for the sale of the property notified Milwaukee that there will be no coverage for any loss, costs, or expenses "resulting from any challenge to and/or claim against the Title insured herein by Ted Spice, or any party or parties claiming by or through Ted Spice." Clerk's Papers (CP) at 190.

Milwaukee's quitclaim deed for the property at issue, states, in relevant part:

> **GRANTOR BRIAN L. BUDSBERG, as duly appointed BANKRUPTCY TRUSTEE** of the Bankruptcy Estate of Mark L. DuBois and Donna E. DuBois, Bankruptcy Case No. 13-46104, pending in the United States Bankruptcy Court for the Western District of Washington (the "Estate"), pursuant to the Order Granting Trustee's Motion To Approve The Sale Of The Estate's and Co-Owner Ted Spice's Interests In The Property Located At 11003 58th St. Ct. E. Free And Clear Of Liens Pursuant To 11 U.S.C. § 363, entered on July 30, 2019 ( the "Order") . . . does hereby CONVEY AND QUIT CLAIM to **GRANTEE MILWAUKEE AVENUE, LLC, a Washington limited liability company**.

CP at 53. The quitclaim deed also provided that "[t]he conveyance is further made 'AS IS' and 'WHERE IS' and without warranty or representation of any kind or character whatsoever, express or implied." CP at 54.

In approving the sale of the property to Milwaukee, the bankruptcy court acknowledged Spice's claims affecting title to the property and ruled that any of Spice's claims related to his interest in the property at issue would attach to the proceeds from the sale rather than the property itself:

> [T]he sale of the [DuBois] Estate's interest, and the interest of Ted Spice, will be free and clear of all liens and interests, except real and personal property taxes. Said liens and interests will attach to the proceeds of the sale as though those proceeds were the Property, and said liens and interests to be satisfied from those proceeds to the extent there are sufficient proceeds. The liens and encumbrances against Ted Spice's interest in the Property shall attach to the percentage of the net proceeds from the sale of Ted Spice's interest. The liens and encumbrances against the Estate's interest in the Property shall attach to the percentage of the net proceeds from the sale of the Estate's interest. All liens, interests, and encumbrances shall attach to the net proceeds in the order, priority, and validity in which they currently exist. Additionally, any pending or future litigation over claims held by any party will attach only to the proceeds and not to the Property sold herein, including all claims by and against Ted Spice or the Estate. All of Ted Spice's interest and any liens or encumbrances referenced above that are attached to his ownership interest will also be eliminated from the clear title passed herewith.

CP at 71.

E.    CURRENT EJECTMENT PROCEEDING

Spice owns two manufactured homes located on the property at issue. On September 20, 2019, Milwaukee filed a complaint for ejectment and trespass based on Spice's failure to remove his two manufactured homes from the property. Spice filed an answer asserting that, pursuant to *Spice* III, the trial court could not eject Spice from the property until the completion of probate—namely, because of his pending fraudulent transfer claims. Spice also filed an affirmative defense asserting that Milwaukee's quitclaim deed does not protect it from claims arising from the probate court and a counterclaim asserting that, due to restrictions on manufactured homes, it would take a substantial period of time to re-locate off the property.

On January 9, 2020, Milwaukee filed a motion for partial summary judgment, requesting the superior court to issue a writ of ejectment requiring Spice to remove his manufactured homes from the property. On February 14, 2020, the superior court denied Milwaukee's motion for partial summary judgment, finding that genuine issues of material fact remained.

On February 24, 2020, Milwaukee filed a motion for reconsideration. On March 6, 2020, the trial court granted Milwaukee's motion for reconsideration, vacated its order denying Milwaukee's motion for partial summary judgment, and granted Milwaukee's motion for partial summary judgment. In issuing the writ of ejectment, the trial court noted that Spice's interest in the property "could technically apply to sale proceeds since all a sale really does is change the form of an asset." I Verbatim Report of Proceedings at 12.

The superior court ordered Spice to remove his two manufactured homes on the property within ten days of the order. If Spice failed to remove the manufactured homes with ten days, then Milwaukee had the right to remove or dispose of the homes at the expense of Spice. The superior court further noted, "[a]ny costs incurred by either party can be presented at trial and considered in determining damages on Mr. Spice's remaining claims." CP at 335.

Spice sought discretionary review of the superior court's order granting partial summary judgment. On May 29, 2020, a commissioner of this court granted Spice's motion for discretionary review under RAP 2.3(b)(2). *See* Ruling Granting Discretionary Review at 7, (May 29, 2020). This appeal follows.

## ANALYSIS

Spice argues that the superior court erred in granting Milwaukee's motion for partial summary judgment to eject Spice's manufactured homes from the property. We disagree.

A.      SUMMARY JUDGMENT – GENUINE ISSUES OF MATERIAL FACT EXIST AFFECTING TITLE

1.      Legal Principles

We review an order granting summary judgment de novo. *Wash. Fed. v. Azure Chelan, LLC*, 195 Wn. App. 644, 652, 382 P.3d 20 (2016). Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). "'A material fact is one upon which the outcome of the litigation depends.'" *Wash. Fed.*, 195 Wn. App. at 652 (quoting *Kim v. O'Sullivan*, 133 Wn. App. 557, 559, 137 P.3d 61 (2006), *review denied*, 159 Wn.2d 1018 (2007)). "Mere allegations or conclusory statements of facts unsupported by evidence do not sufficiently establish such a genuine issue." *Discover Bank v. Bridges*, 154 Wn. App. 722, 727, 226 P.3d 191 (2010). We review facts and inferences in the light most favorable to the non-moving party. *Wash. Fed.*, 195 Wn. App. at 652.

"In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial burden, the burden then shifts to the nonmoving party to make a sufficient showing that a genuine issue of material fact exists. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The nonmoving party cannot rely on speculation or conclusory statements to defeat summary judgment. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018); *SentinelC3, Inc., v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). All evidence and all reasonable inferences therefrom are considered in the light most favorable to the nonmoving party. *Young*, 112 Wn.2d at 226. Summary judgment is improper if there are genuine issues of material fact. *Ehrhart v. King County*, 195 Wn.2d 388, 409-10, 460 P.3d 612 (2020).

"Ejectment is a remedy for one who, claiming a paramount title, is out of possession" of real property. *Bar K Land Co. v. Webb*, 72 Wn. App. 380, 383, 864 P.3d 465 (1993). Chapter 7.28 RCW governs actions for ejectment. In order to maintain an action for ejectment, a plaintiff must first demonstrate a "valid subsisting interest in real property, and a right to the possession thereof." RCW 7.28.010; *Grove v. Payne*, 47 Wn.2d 461, 464-65, 288 P.2d 242 (1955). In demonstrating a "valid subsisting interest," the plaintiff "shall set forth in his or her complaint the nature of his or her estate, claim, or title to the property." RCW 7.28.120. If a plaintiff can demonstrate a valid subsisting interest in the real property, then they are permitted to maintain an ejectment action "against the person claiming the title or some interest therein" to recover the property. RCW 7.28.010.

When multiple valid subsisting interests in the real property are demonstrated, the court must then determine which of the interests asserted are superior. RCW 7.28.120; *Grove*, 47 Wn.2d at 466. And the party with superior title, whether legal or equitable, shall prevail. RCW 7.28.120. Furthermore, "'[i]t is a long-standing principle that [a] plaintiff in an action to quiet title must succeed on the strength of his own title and not on the weakness of his adversary.'" *Byrd v. Pierce County*, 5 Wn. App. 2d 249, 266, 425 P.3d 948 (2018) (internal quotation marks omitted) (quoting *Bavand v. Onewest Bank, F.S.B.*, 176 Wn. App. 475, 502, 309 P.3d 636 (2013)).

2.      Valid Subsisting Interest

Spice argues that there is a genuine issue of material fact as to whether Milwaukee has a "valid subsisting interest" in the property to maintain an action for ejectment. Specifically, Spice argues that genuine issues of material fact remain as to Milwaukee's title to the property because

No. 54711-2-II

DuBois' interest in the property is still subject to probate administration and can later be divested. We disagree.

Here, Milwaukee alleged legal title to the property. In support, Milwaukee offered the quitclaim deed to the property with its motion for partial summary judgment. The quitclaim deed states that

> **GRANTOR BRIAN L. BUDSBERG, as duly appointed BANKRUPTCY TRUSTEE** of the Bankruptcy Estate of Mark L. DuBois and Donna E. DuBois, Bankruptcy Case No. 13-46104, pending in the United States Bankruptcy Court for the Western District of Washington (the "Estate"), pursuant to the Order Granting Trustee's Motion To Approve The Sale Of The Estate's and Co-Owner Ted Spice's Interests In The Property Located At 11003 58th St. Ct. E. Free And Clear Of Liens Pursuant to 11 U.S.C. § 363, entered on July 30, 2019 ( the "Order") . . . does hereby CONVEY AND QUIT CLAIM to **GRANTEE MILWAUKEE AVENUE, LLC, a Washington limited liability company**.

CP at 53.

Because Milwaukee asserted its legal title to the property through the quitclaim deed, Milwaukee has demonstrated a "valid subsisting interest" in the property sufficient to maintain an action for ejectment. *See* RCW 7.28.010, .120. Contrary to Spice's argument, this remains true even if Milwaukee's title to the property can later be divested by Spice's fraudulent transfer claims in the probate proceeding. *See Grove*, 47 Wn.2d at 465-66 (holding that a plaintiff with a defeasible estate to real property has a present valid subsisting interest sufficient to bring an action under RCW 7.28.010). Accordingly, there is no genuine issue of material fact as to whether Milwaukee has a present "valid subsisting interest" sufficient to maintain an action for ejectment.

3.     Superiority Of Title

Spice argues that genuine issues of material fact remain as to whether Milwaukee has superior title because the parties' respective interests in the property are still being litigated in the probate court—namely, Spice's unresolved fraudulent transfer claim.  We again disagree.

Under the Uniform Voidable Transfers Act, chapter RCW 19.40, a transfer made by a debtor is fraudulent to a creditor if the property was transferred

>           (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>           (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>           (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>           (ii) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

RCW 19.40.041(1)(a), (b).  A fraudulent transfer made by a debtor is "voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred."  RCW 19.40.041(1).

RCW 19.40.071 provides remedies for creditors adversely affected by a fraudulent transfer. RCW 19.40.071 provides that

>           (1) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in RCW 19.40.081, may obtain:
>           (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>           (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and
>           (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>           (i) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(iii) Any other relief the circumstances may require.

RCW 19.40.081(1) provides that "[a] transfer or obligation is not voidable under RCW 19.40.041(1) . . . against a person that took in good faith and for a reasonably equivalent value." To the extent a transfer is avoidable, the creditor "may recover judgment for the value of the asset transferred" or recover "from the asset transferred or its proceeds." RCW 19.40.081(2)(a), (b).

Here, two transfer events occurred. In November 2014, DuBois transferred properties from the Estate to herself individually. In March 2015, the trial court vacated these November 2014 transfers. Shortly thereafter on March 12, 2015, DuBois attempted to transfer the property once more. But this time, DuBois transferred the property from herself individually to herself as the personal representative of the Estate.

In *Spice* III, Spice alleged that the transfers were fraudulent and, as a result, DuBois fraudulently misrepresented the ownership of the property from March 2015 until Spice's discovery of the transfers in February 2017. Slip op. at 28. Spice further alleged that DuBois' transfers were fraudulent because they did not properly return title to the Estate to reflect his percentage of ownership in the properties and instead impaired Spice's ability to secure financing. *Id*. Spice also alleged that the "Estate continued to engage in a pattern of deceptive behaviors to avoid his claims. [DuBois'] previous contravention of a court order preventing transfers raises a question of fact regarding [DuBois'] intent to defraud." *Id*. We acknowledged Spice's fraudulent transfer claim in *Spice* III and held that "[b]ecause the Estate failed to controvert Spice's evidence . . . taken in a light most favorable to Spice, a material issue of fact exists regarding the fraudulent transfer claim." *Id*. We also held that

> [DuBois'] interest in the Estate property has been, and remains to be, subject to this probate proceeding. Until this probate proceeding is completed, [DuBois'] interest now her bankruptcy estate's interest—is subject to the outcomes of probate. Only after the probate proceeding closes can [DuBois'] resulting interests be treated as her own.
>
> . . . .
>
> . . . Because [DuBois'] interest remains subject to the completion of probate, *the bankruptcy estate's interest in the properties is also subject to the completion of probate*.

*Id*. at 13, 15 (emphasis added). Any interest Milwaukee has in the property at issue flowed from DuBois' interest in the property. Based on our holding in *Spice* III, that interest remains unresolved until the Mathews probate proceeding is complete.

Here, the Mathews probate proceeding is still not complete, and the superior court has yet to decide the fraudulent transfer claim addressed and remanded in *Spice* III.[4] However, unlike *Spice* III, the superior court here authorized the transfer of the property at issue. So, even if the property transfer was initially fraudulent, the superior court's authorization allowing the transfer of the property to the DuBoises' bankruptcy estate validated the transfer. Because the superior court validated the property transfer, and because Milwaukee purchased the property from a bankruptcy trustee with approval from the bankruptcy court, Spice would not prevail in his fraudulent transfer claim even when the evidence is viewed in light most favorable to him.

---

[4] At oral argument, counsel for Milwaukee informed this court that "all the claims of Spice and his action were dismissed by the [superior] court in October of 2020." Wash. Court of Appeals, oral argument, *Milwaukee Avenue LLC v. Ted Spice*, No. 54711-2-II (May 13, 2021), at 13 min., 44 sec. through 13 min., 51 sec. (on file with court). However, the dismissal of Spice's fraudulent transfer claim in the probate court is not in the record before this court. Facts averred to during oral argument but not contained in the record on appeal cannot be considered. *See Moore v. Pacific Northwest Bell*, 34 Wn. App. 448, 455, 662 P.2d 398, *review denied*, 100 Wn.2d 1005 (1983).

Therefore, Spice fails to demonstrate that there is a genuine issue of material fact as to whether Milwaukee has superior title. And because no genuine dispute of material fact remains as to whether Milwaukee has superior title in the property at issue, the superior court did not err in granting partial summary judgment ejecting Spice's manufactured homes as a matter of law.[5]

Spice also argues that the superior court erred in granting partial summary judgment because it improperly determined that any remaining claims that Spice has against the Mathews Estate could be satisfied out of the proceeds of the sale rather than title to the property at issue. Spice misapprehends where his remedy lies.

As noted above, Spice's interest in the property at issue was sold pursuant to the DuBois bankruptcy proceeding. In that proceeding, the bankruptcy court specifically addressed whether the DuBoises' bankruptcy trustee could sell Spice's interest under 11 U.S.C. § 363(h), which was adversarial in nature. Any remaining argument that Spice has about his continuing title to the property was addressed by the bankruptcy court. Therefore, if Spice believed that the bankruptcy court incorrectly decided the nature of his interest in the property, then his remedy was to appeal the order approving the sale.

In sum, the superior court did not err in granting partial summary judgment because no genuine issue of material fact remains as to whether Milwaukee has a valid subsisting interest and superior title in the property at issue.

---

[5] Because the superior court's March 2017 Order allowing the property transfer would defeat Spice's fraudulent transfer claim, we need not reach Spice's argument that Milwaukee was not a bona fide purchaser without notice.

B.      EQUITABLE PRINCIPLES DO NOT REQUIRE REVERSAL

Spice argues that equitable principles preclude Milwaukee's right to eject the manufactured homes.  We disagree.

We review decisions in equity for an abuse of discretion.  *Neighbors v. King County*, 15 Wn. App. 2d 71, 90, 479 P.3d 724 (2020).  "A trial court abuses its discretion when its decision is based on untenable grounds, or is manifestly unreasonable or arbitrary."  *Id.*

"The right to eject an unlawful encroaching structure is among the most precious contained within the bundle of property rights."  *Garcia v. Henley*, 190 Wn.2d 539, 540, 415 P.3d 241 (2018).  Generally, courts will order an encroacher to remove encroaching structures, even though removal is extraordinary relief.  *Proctor v. Huntington*, 169 Wn.2d 491, 496, 238 P.3d 1117 (2010), *cert. denied*, 562 U.S. 1289 (2011); *Arnold v. Melani*, 75 Wn.2d 143, 152, 449 P.2d 800, 450 P.2d 815 (1968).  However, the liability rule provides an exception where ordering the removal of the structure would be oppressive.  *Proctor*, 169 Wn.2d at 500; *Arnold*, 75 Wn.2d at 152.  The liability rule is a remedy based in equity.  *Proctor*, 169 Wn.2d at 498, 500.

Under the "liability rule" exception, an injunction to compel the removal of the encroachment can be "withheld as oppressive" if:

> (1) The encroacher did not simply take a calculated risk, act [in] bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

*Arnold*, 75 Wn.2d at 152.  Each of these elements must be proved by clear and convincing evidence.  *Garcia*, 190 Wn.2d at 545.  The burden lies with the encroacher.  *Id.* at 540.  "If this

burden is not carried, failure to enter an otherwise warranted ejectment order is reversible error." *Id.*

Here, the superior court ordered Spice to remove the two manufactured homes on the property within ten days after the date of the order. If Spice failed to remove the manufactured homes with ten days, then Milwaukee had the right to remove or dispose of the homes at the expense of Spice. The superior court further noted "[a]ny costs incurred by either party can be presented at trial and considered in determining damages on Mr. Spice's remaining claims." CP at 335.

While Spice is correct that the liability rule concept has been applied to ejectment cases, Spice does not present any argument on the factors under *Arnold* that would justify the superior court's order for ejectment being "withheld as oppressive." *Arnold*, 75 Wn.2d at 152; *see* RAP 10.3(a)(6); *Proctor*, 169 Wn.2d at 498. Because Spice failed to carry his burden to prove that the order for ejectment was unwarranted under *Arnold*, we hold that the superior court did not abuse its discretion in ordering Spice to remove his manufactured homes from the property. *See Garcia*, 190 Wn.2d at 540, 545; *Neighbors*, 15 Wn. App. 2d at 90. Accordingly, equitable principles do not require reversal of the superior court's order granting partial summary judgment to eject Spice's manufactured homes from the property.

Because no genuine issues of material fact remain as to whether Milwaukee has a valid subsisting interest and superior title in the property at issue, we hold that the superior court did not err in granting partial summary judgment. We also hold that equitable principles do not merit reversal. Accordingly, we affirm the superior court's order granting partial summary judgment ejecting Spice's manufactured homes from the property at issue.

No. 54711-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Worswick, J.

Cruser, J.